IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


BANK OF NORTH CAROLINA and )
CHELDA, INC., )
              Plaintiffs, )
        v. )
RCR MARKETING, LLC, )           1:10CV663
 )
              Defendant. )
 )
 )
 )

ORDER AND MEMORANDUM OPINION

BEATY, Chief Judge.

This matter is presently before the Court on motions seeking injunctive relief filed by

Plaintiffs Bank of North Carolina ("the Bank") and Chelda, Inc. ("Chelda").[1]  On August 27,

2010, the Bank filed a Motion for Temporary Restraining Order ("Motion for TRO") [Doc.

#12] pursuant to Rule 65 of the Federal Rules of Civil Procedure.  The Court granted the Bank's

Motion and entered a Temporary Restraining Order ("TRO") [Doc. #18] on August 27, 2010.

Based on the relief sought by the Bank, the TRO contained the following terms: (1) Defendant

RCR Marketing, LLC ("RCR") is prohibited from selling or transferring ownership of furniture,

_____

[1] Prior to the Preliminary Injunction Hearing on October 18, 2010, Chelda, then a named defendant in the case, made a Motion to Realign the Parties [Doc. #61].  Following the October 18, 2010 hearing, the Court granted Chelda's Motion to be realigned as a party plaintiff in this case and entered an Order that Chelda file any claims it may have as a realigned party plaintiff within thirty (30) days [Doc. #66].  In compliance with the Court's Order, Chelda filed the Amended Complaint on November 17, 2010, asserting its claims in this matter [Doc. #74]. Chelda also has filed a Motion for Preliminary Injunction [Doc. #63] which seeks the same relief as that sought by the Bank in its Motion for Preliminary Injunction [Doc. #34].  Because Chelda's claims are now properly before the Court, this Order and Memorandum addresses that relief sought in both of the Plaintiffs' Motions.

equipment, and fixtures removed from the locations operated as individual Ham's restaurants;[2]

(2) RCR shall be permitted to use the Trademarks at issue provided it shall keep evidence or

records of all its sales while using such Trademarks and that four percent (4%) of its gross sales

generated from operation of the Ham's restaurants while using the Trademarks are deposited

into and kept as escrow in the trust account of RCR's counsel; and (3) Plaintiff the Bank shall

post bond of $30,000.00.  A preliminary injunction hearing was originally scheduled for

September 9, 2010, to determine whether or not to continue the terms of the August 27, 2010

TRO [Doc. #18].  On September 1, 2010, upon Motion to Continue filed by Defendant RCR

[Doc. #22], the Court continued the preliminary injunction hearing to October 18, 2010 [Doc.

#25].  In its Order granting the continuance, the Court provided that the Bank, at that time the

only party plaintiff, could file any subsequent motions seeking additional or different injunctive

relief than that set forth in the Motion for TRO, which the Court would then consider at the

preliminary injunction hearing.  In compliance with the Court's filing deadlines, the Bank filed

a subsequent Motion for Preliminary Injunction [Doc. #34], which Chelda later adopted in its

own Motion [Doc. #63], seeking different relief than that set forth in the Motion for TRO as

follows: RCR shall be enjoined from (1) using the Trademarks, as that term is defined in the

Verified Complaint, in commerce for the duration of this litigation; and (2) removing any

equipment, furniture, or fixtures from the locations operated as individual Ham's restaurants.[3]

---

[2] For purposes of this Order, "Ham's restaurants" means restaurants utilizing the Trademarks at issue regardless of whether such restaurants were operated by Ham's Restaurants, Inc. ("Ham's Inc.") or are currently operated by Defendant RCR.

[3] The following individual Ham's restaurants are at issue: 310 W. Franklin Street, Chapel Hill, NC 27514; 2373 Riverside Drive, Danville, VA 24540; 3709-J Battleground Avenue,

This case came before the Court on October 18, 2010, for hearing on the terms of the August 27, 2010 TRO and the terms of the Plaintiffs' Motions for Preliminary Injunction [Doc. #34, #63].

I.    BACKGROUND

This case involves a dispute over the ownership of certain furniture, fixtures, equipment, and trademarks used in the course of operating the individual Ham's restaurant locations. The dispute arose following the bankruptcy sale of assets of Debtor Ham's Restaurants, Inc. ("Ham's Inc."), the wholly-owned subsidiary of Plaintiff Chelda. In October 2009, Ham's Inc. filed for bankruptcy in the Bankruptcy Court for the Eastern District of North Carolina. On August 3, 2010, a hearing and absolute auction was held during which Defendant RCR purchased all of Ham's Inc.'s "right, title and interest in the assets, property and rights, tangible and intangible (including without limitation, equipment, inventory, supplies, goodwill, trademarks, licenses, and other intellectual property), of [the Ham's Inc.] bankruptcy estate . . . for a total consideration of $360,000." The sale was made to RCR without any warranties of title, merchantability, or fitness. On August 12, 2010 Rocco Scarfone, manager of RCR, entered into a Management Agreement with Joseph Callaway, Chapter 7 Bankruptcy Trustee for Ham's Inc., whereby RCR was given the "exclusive right to manage the assets and business affairs of [Ham's Inc.]" until closing. The Bankruptcy Court signed an Order designating RCR as the purchaser of Ham's

Greensboro, NC 27408; 3017 High Point Rd, Greensboro, NC 27403; 701 Evans Street, Greenville, NC 27834; 221 University Blvd, Harrisonburg, VA 22801; 204 Hwy 321 NW, Hickory, NC 28601; 5840 Samet Drive, High Point, NC 27265; 2001 N. Main Street, High Point, NC 27262; 550 Pineview Drive, Kernersville, NC 27284; 5704 Seminole Ave, Lynchburg, VA 24502; 1707 South Horner Blvd., Sanford, North Carolina 27330; and 1910 E. Dixon Blvd., Shelby, NC 28150.

Inc.'s assets, as described above, on August 13, 2010. Closing on the bankruptcy sale took place on August 19, 2010.

Also on August 19, 2010, the Bank filed a Verified Complaint [Doc. #5] in the General Court of Justice, Superior Court Division of Guilford County, North Carolina. In conjunction with the Bank's action, Chelda filed its Complaint on November 17, 2010 setting forth its claims [Doc. #74].[4] In their respective Complaints, Plaintiffs claim that Chelda is the owner of most of the equipment, furniture, and fixtures at issue located in the individual Ham's restaurants. Plaintiffs also claim that Chelda is the registered owner of the Trademarks at issue and has never assigned such ownership to any other person or entity. The Bank claims an interest in the assets at issue based on its relationship to Chelda as a secured creditor. Plaintiffs claim that the Bank extended Chelda credit in the original principal amount of $3.5 million which the Bank secured by perfecting a security interest in all of Chelda's "accounts receivable, inventory, machinery, and equipment . . . , whether now owned or hereafter acquired." In addition, Plaintiffs claim that the Bank holds a security interest in Chelda's personal property "including, but not limited to, general intangibles and trademarks." Plaintiffs also claim that the Bank owns the real property located at 3017 High Point Road, Greensboro, North Carolina ("3017 High Point Road property") and any fixtures attached to that real property. As such, Plaintiffs seek declaratory relief identifying which fixtures the Bank owns at the 3017 High Point Road property, identifying the equipment Chelda owns at all listed locations which serves as collateral for loans

_____

[4] In addition to the common declaratory judgment claims asserted by both Plaintiffs, Chelda has asserted its own claims for Lanham Act Trademark Infringement, Common law Unfair and Deceptive Trade Practices, and Statutory Unfair and Deceptive Trade Practices.

by the Bank to Chelda, and declaring Chelda as true owner of the Trademarks and associated good will which serve as collateral for the loans extended by the Bank to Chelda. Defendant RCR challenges Plaintiffs' claims on the grounds that RCR purchased all of Ham's Inc.'s assets at the bankruptcy sale described below, including the equipment, furniture, fixtures, and Trademarks at issue, and therefore Chelda and the Bank no longer have any interest in that property. Plaintiffs now seek injunctive relief, as set forth above, prohibiting RCR's use and/or removal of the property at issue for the pendency of this litigation.

II.     PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary and drastic remedy. A movant must establish four elements before a preliminary injunction may issue: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). All four elements must be satisfied. Id. In this case, the hearing on the matter of injunctive relief was originally scheduled to determine whether to continue the terms of the August 27, 2010 TRO [Doc. # 18]. Upon continuing the hearing, the Court provided the Bank, at that time the only party Plaintiff, the option of filing subsequent motions seeking additional or different relief than that provided in the TRO with the understanding that, absent any additional filings, the Court would proceed in addressing the terms of the TRO. Since subsequent motions for injunctive relief were filed prior to the hearing on October 18, 2010, by both the Bank and realigned party plaintiff Chelda, the Court now considers the evidence in light of both the August 27, 2010 TRO

and the subsequent Motions for Preliminary Injunction [Doc. #34, #63].        The discussion

in this case will address separately the issues surrounding (1) the Trademarks and (2) the

equipment, furniture, and fixtures, within the context of the preliminary injunction standard.

      1.     Trademarks

Plaintiffs contend that they are likely to succeed on the merits of their claims as to the

Trademarks on the grounds that Chelda is the claimed registrant and owner of the Trademarks

at issue according to documents filed with the United States Patent and Trademark Office

("USPTO"). Under the Lanham Act, "[a] certificate of registration of a mark upon the principal

register . . . [is] prima facie evidence of the validity of the registered mark and of the registration

of the mark, of the owner's ownership of the mark, and of owner's exclusive right to use the

registered mark in commerce on or in connection with the goods or services specified in the

certificate . . . ." 15 U.S.C. § 1057(b).  To avoid abandonment of a valid trademark, the owner

must continue to use the trademark in commerce.  See 15 U.S.C. § 1127.  A trademark owner

can license use of the trademark to another and retain his ownership interest in the trademark

so long as the owner "maintains adequate control over the quality of goods and services that the

licensee sells with the [trademark]."  Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113,

1121 (5th Cir. 1991).  In addition, under 15 U.S.C. § 1055, "[w]here a registered mark . . . is or

may be used legitimately by related companies, such use shall inure to the benefit of the

registrant . . ., and such use shall not affect the validity of such mark . . . ."  Plaintiffs contend

that Chelda, as the parent company, properly licensed the Trademarks to Ham's Inc., as the

subsidiary and related company, for continuous use in the individual Ham's restaurants, and that

such use was for the benefit of Chelda. Furthermore, Plaintiffs claim that Chelda never assigned ownership of the Trademarks to any other person or entity, thus arguing that Chelda has at all times been the sole registrant and owner of the Trademarks. As such, Plaintiffs contend that Chelda is the presumed owner of the Trademarks, Chelda has not abandoned the Trademarks at any point in time, and RCR has not and cannot show any evidence that it has permission from Chelda to use the Trademarks in commerce. Plaintiffs therefore contend that RCR should be prohibited from all use of the Trademarks in commerce.

In opposition to Plaintiffs' contentions regarding Chelda's purported ownership of the Trademarks, RCR argues that it has outright ownership of the Trademarks pursuant to the bankruptcy sale purchase of all of Ham's Inc.'s "right, title and interest in the assets, property and rights, tangible and intangible (including without limitation, equipment, inventory, supplies, goodwill, trademarks, licenses, and other intellectual property)." RCR contends that confusion exists regarding the separation of Ham's Inc. and Chelda as operational businesses, which in turn has created a question of whether the companies operated as one entity, or, if separate, which company had title to the assets in question, including the Trademarks. RCR supports its contention with a report from the accounting firm reviewing the Ham's Inc. bankruptcy estate, affidavit testimony from a former Chelda CFO, and other documents purporting to show that it is, at best, unclear whether Ham's Inc., Chelda, or both owned the Trademarks in question. To this point, Chelda argued at the October 18, 2010 hearing that it has always been a separate corporation from Ham's Inc., and remains a viable corporation independent of the bankruptcy proceedings involving Ham's Inc. Considering all the evidence, the Court finds, without

7

deciding the question of ownership, that Plaintiffs have shown a likelihood of success on the merits of the trademark claim based on the existence of a trademark registration in Chelda's name and other evidence suggesting that Chelda did not expressly assign whatever ownership interest it might have, if any, under that registration.

Plaintiffs next argue that they will suffer irreparable harm should RCR be allowed to continue use of the Trademarks in commerce without Chelda's permission or without entering into a license agreement with Chelda. Plaintiffs argue that RCR's use of the Trademarks without Chelda's permission constitutes trademark infringement. Plaintiffs claim that due to Chelda's inability to currently monitor and control RCR's use of the Trademarks, RCR's continued use could lead to irreparable loss of the goodwill associated with the Trademarks and potential involuntary abandonment of the Trademarks. See Taco Cabana Int'l, Inc., 932 F.2d at 1121. Plaintiffs further contend that Chelda has not abandoned the Trademarks to this point due to the purported license agreement with Ham's Inc., which provided the requisite continued use for Chelda to maintain the Trademarks. Plaintiffs argue that Chelda must continue its monitoring and control of use of the Trademarks in the hands of a licensed user so as to avoid the potential of involuntary abandonment of the Trademarks during the pendency of this litigation. In addition, Plaintiffs argue that the balance of equities favors prohibiting RCR's use of the Trademarks because RCR entered into the bankruptcy sale with notice that Chelda claimed ownership of the Trademarks, and RCR made its purchase knowing there existed no warranties of title in any assets purchased. Furthermore, Plaintiffs argue that it is in the public interest to prevent RCR's use of the Trademarks because any deviation from the standards of

operation allegedly maintained by Chelda during Ham's Inc.'s use would cause confusion among the consuming public regarding the goods and services rendered during use of the Trademarks. In opposition, RCR argues that prohibiting all use of the Trademarks in commerce, rather than allowing it through RCR's continued operation of the Ham's restaurants, would cause the irreparable harm to the goodwill associated with the Trademarks, which Plaintiffs seek to protect, and to the hundreds of employees who will lose their jobs through the closures of the Ham's restaurants at issue. In addition, RCR argues that, at a minimum, it purchased whatever license Ham's Inc. had, which allowed use of the Trademarks under terms yet to be established by any party. Therefore, RCR claims that continued use under that same license Ham's Inc. purportedly had cannot create the irreparable harm alleged by Plaintiffs. Furthermore, RCR argues that it has operated and intends to continue operating the Ham's restaurants in a manner that reflects positively on the "Ham's" name as it has been known to the consuming public to this point. As such, RCR argues that cessation of the Ham's restaurants would weigh against both the balance of equities and the public interest.

Considering the evidence, the Court declines to resolve the question of whether a license agreement existed between Ham's Inc. and Chelda. The Court also will not attempt to determine what terms, if any, such license agreement may have included. As of the October 18, 2010 hearing, no evidence of any specific license agreement between Ham's Inc. and Chelda has been produced. As such, the Court does not resolve any questions of ownership nor make any determinations based on abandonment arguments that have been or may be raised by the parties. However, the Court does note that RCR is currently the only entity actually using the

Trademarks in commerce. Evidence suggests that Chelda has never used the Trademarks in commerce itself, but rather only benefitted from the use by another, namely use by Ham's Inc. under a purported license agreement. Furthermore, Chelda is not currently using the Trademarks itself and has not provided the Court with another entity which would definitively become the immediate user of the Trademarks at this time. As such, although the Court takes into account that Chelda seeks to maintain control over the use of the Trademarks, the Court finds that immediate and continued use of the Trademarks cannot be accomplished by Chelda, itself, at this time. Therefore, prohibiting all use of the Trademarks in commerce by RCR would neither protect the purported ownership interest claimed by Chelda nor protect the goodwill of the Trademarks in the eyes of the consuming public. As such, the Court will not grant the preliminary injunctive relief sought by the Bank to the extent that such relief would entirely prohibit RCR from using the Trademarks in commerce. Instead, the Court will allow RCR to continue use of the Trademarks in commerce so long as it diligently complies with payment of the four percent (4%) of gross sales into escrow during the period of use. In addition, to preserve whatever ownership interest Chelda may have in the Trademarks, the Court will allow Chelda to monitor use of the Trademarks in the manner it claims to have done as purported licensor during Ham's Inc.'s use of the Trademarks. As such, Chelda shall have the authority to monitor operations of the Ham's restaurants and the trademark use therein for purposes of maintaining the consistency of the goods and services sold in conjunction with use of the Trademarks. Such monitoring authority shall include access to individual Ham's restaurants for purposes of inspecting the quality of goods and services rendered therein. In addition, the Court

will order RCR to timely report to Chelda RCR's payments of the four percent (4%) of gross sales into the previously designated escrow account as a means of allowing Chelda to monitor RCR's compliance with such payments. This Order in no way grants Chelda, or any other party, a present right to the money held in the escrow account as described above. In addition, Chelda shall not have the authority to substantially interfere with RCR's general management of the individual Ham's restaurants. The authority to manage the day-to-day operations of the individual Ham's restaurants shall lie with RCR during the pendency of this litigation. Furthermore, any actions undertaken to monitor use of the Trademarks shall be done by representatives of Chelda, as purported owner of the Trademarks, and not by representatives of the Bank. Should a conflict arise such that a licensor in Chelda's position would reasonably believe RCR's use of the Trademarks to be compromising the goodwill associated with the Trademarks, either Chelda or the Bank may move the Court to hear that conflict at the appropriate time. Similarly, should the Bank or Chelda substantially interfere with the day-to-day management and operations of the individual Ham's restaurants for purposes other than monitoring use of the Trademarks, RCR may move the Court to hear such conflict at the appropriate time.

###### 2. Equipment, Furniture, Fixtures

As to the equipment, furniture, and fixtures used in the operation of the individual Ham's restaurants, Plaintiffs claim that Chelda owns "all equipment acquired after 2004 located in the Ham's restaurants and at the headquarters of Chelda and Ham's." Plaintiffs claim that Ham's Inc. was simply an authorized user of the property and RCR should be prohibited from

11

removing any such property during the pendency of this litigation. In addition, Plaintiffs claim that the Bank is the owner the real property located at the 3017 High Point Road property and therefore claims ownership of the fixtures attached to that real property. Plaintiffs claim that the Bank merely leases use of the property to RCR for operation of a Ham's restaurant. While the Bank's ownership of the building at 3017 High Point Road property is seemingly uncontested, a dispute exists as to the ownership of the equipment, furniture, and fixtures therein. Plaintiffs further argue that RCR's attempts at piecemeal removal and sale any of the equipment, furniture, and fixtures will result in an irreparable loss of value in the property due to the costs associated with removal, damage done to the property as a result of removal, and reinstallation of the property in a new location. Plaintiffs contend that property such as that involved in this case garners its full sale value if sold in conjunction with the restaurant unit as a whole rather than as individual pieces. In addition, Plaintiffs argue that, should RCR remove and sell pieces of property later determined to be owned by Chelda, RCR would be unable to pay any judgment against it for conversion because Plaintiffs contend that RCR has "insufficient assets to satisfy any monetary judgments." On the other hand, RCR presents argument that it was initially capitalized with and currently maintains sufficient funds to withstand a monetary judgment in Plaintiffs' favor should such a judgment issue in this case.

In support of its opposition to Plaintiffs' Motions for injunctive relief, RCR claims that Ham's Inc. filed a list of its assets with its Bankruptcy Petition which, RCR argues, included the equipment, furniture, and fixtures intended to be sold in the resulting bankruptcy sale. RCR contends that it purchased all those listed assets in the bankruptcy sale. To support its

contention that Ham's Inc., rather than Chelda, owned the property ultimately purchased by RCR in the bankruptcy sale, RCR provided balance sheets and tax returns purporting to show that Ham's Inc. owned a greater percentage of fixed assets, including certain equipment, used in the course of operating the individual Ham's restaurants than did Chelda. In addition, as to Plaintiffs claim of irreparable harm, RCR contends that, in the event that Plaintiffs are ultimately successful in their claims, Plaintiffs will have to conduct the same piecemeal removal of the property in question that they seek to avoid by enjoining RCR, because RCR retains the leases to the structures in which the property is located. As those leases are not contested in this litigation and RCR has possession of the buildings for the duration of the leases, RCR argues that the alleged devaluation of the property through piecemeal removal and sale will occur regardless of the outcome of this litigation. RCR, argues, therefore, that the alleged devaluation from removal is not an irreparable harm which can be remedied by the preliminary injunctive relief sought by the Bank. Furthermore, RCR claims that any harm to Plaintiffs that may result from RCR's removal and sale of the property in question can be remedied by monetary damages, thus negating the need for equitable injunctive relief. RCR argues that the equipment, furniture, and fixtures involved in this case have a measurable monetary value, and RCR has sufficient capital to pay any monetary judgment issued against it should the ultimate question of ownership be resolved in Plaintiffs' favor.

Considering all the evidence, the Court finds that Plaintiffs have shown a likelihood of success on the merits and irreparable harm as to the claims relating to the removal of only some equipment, furniture, and fixtures used in the operations of the individual Ham's restaurants,

but not all such property. As such, Plaintiffs are not entitled to preliminary injunctive relief that would prohibit removal of all equipment, furniture, or fixtures located at the individual Ham's restaurants. Plaintiffs have presented affidavit evidence suggesting that certain property acquired after 2004 was owned by Chelda rather than Ham's Inc. Documentation presented to the Court in balance sheets and tax returns suggests that Chelda owned some equipment, furniture and fixtures but does not clarify which assets are included in the post-2004 time frame and what the value of any individual assets might be. Given that it is unclear what the actual value of all disputed property might be and to what extent RCR could pay judgments against it should this litigation be resolved in Plaintiffs' favor, the Court finds that Plaintiffs have met the requisite showing for injunctive relief as to the property at issue acquired after 2004. Therefore, as to property enumerated on the list of assets filed with the Ham's Inc. Bankruptcy Petition, the Court finds that RCR is prohibited, during the pendency of this litigation, from removing any such property which is listed as purchased on or after January 1, 2005. In addition, to the extent that a question exists as to ownership of equipment, furniture, or fixtures purchased on or after January 1, 2005 which is not enumerated in the aforementioned list, RCR is prohibited from removing such property during the pendency of this litigation. However, with respect to the property listed as purchased prior to January 1, 2005, including any such property located in the 3017 High Point Road property, Plaintiffs have not shown a likelihood of success on the merits and are therefore not entitled to injunctive relief as to that property. Therefore, RCR may remove and/or sell property enumerated in the list of assets filed with the Ham's Inc. Bankruptcy Petition which is listed as purchased on or before December 31, 2004.

III.    CONCLUSION

Based upon the foregoing, the Court will DENY Plaintiffs' Motions for Preliminary Injunction to the extent that the Motions seek to prohibit RCR from all use of the Trademarks in commerce during the pendency of this litigation. As to RCR's use of the Trademarks, the Court will continue the term of the August 27, 2010 TRO in this Preliminary Injunction which allows RCR to use the Trademarks in commerce and also requires that RCR keep records of its gross profits while using the Trademarks and deposit four percent (4%) of those gross profits into the previously designated escrow account during the pendency of this litigation. In addition, this Court will grant Chelda, but not the Bank, the authority, such as that of a licensor, to monitor operations of use of the Trademarks in the Ham's restaurants for purposes of maintaining the consistency of the goods and services sold in conjunction with use of the Trademarks. Furthermore, the Court orders RCR to timely provide records to Chelda of its payment of the four percent (4%) of gross profits into escrow as a means of affording Chelda the ability to monitor RCR's compliance. During the pendency of this litigation, should RCR cease operations of the individual Ham's restaurants or begin operating any individual Ham's restaurant in a manner such that a licensor in Chelda's position would reasonably find harm done to the goodwill associated with the Trademarks, the Court will afford the parties an opportunity to seek redress to that effect.

Furthermore, the Court will GRANT in PART and DENY in PART Plaintiffs' Motions for Preliminary Injunction with respect to the removal of all equipment, furniture, and fixtures locations operated as individual Ham's restaurants. As to property enumerated on the list of

assets filed with the Ham's Inc. Bankruptcy Petition, the Court will GRANT Plaintiffs' Motions and enjoin RCR, during the pendency of this litigation, from removing any such property which is listed as purchased on or after January 1, 2005. In addition, to the extent that a question exists as to ownership of equipment, furniture, or fixtures purchased on or after January 1, 2005 which is not enumerated on the aforementioned list, RCR is prohibited from removing such property during the pendency of this litigation. With respect to the property listed as purchased prior to January 1, 2005, the Court will DENY Plaintiffs' Motions. RCR may remove and/or sell property enumerated in the list of assets filed with the Ham's Inc. Bankruptcy Petition which is listed as purchased on or before December 31, 2004.

Given the foregoing conclusions, relief under this Preliminary Injunction is set forth as follows:

1.      Defendant RCR Marketing, LLC is hereby permitted to use the Trademarks at issue (including, without limitation, operating individual Ham's restaurants and advertising such operation), provided it shall keep evidence or records of all its sales while using such Trademarks and that four percent (4%) of its gross sales generated from operation of the Ham's restaurants while using the Trademarks are deposited into and kept as escrow in the trust account of Forman Rossabi Black until such time as the issues set forth in Plaintiffs' Complaints and any counterclaims raised by Defendant RCR Marketing, LLC are fully adjudicated or otherwise ordered by a court of competent jurisdiction;

2.      Plaintiff Chelda, Inc. is hereby granted authority to monitor operations of the

Ham's restaurants for purposes of maintaining the consistency of the goods and services sold in conjunction with use of the Trademarks. Should RCR Marketing, LLC cease operations of the individual Ham's restaurants or begin operating any individual Ham's restaurant in a manner such that a licensor in Chelda's position would reasonably find harm done to the goodwill associated with the Trademarks, the Court will afford Plaintiffs the opportunity to seek redress to address that concern. Furthermore, should Plaintiffs substantially interfere with the management and operations of the individual Ham's restaurants for purposes other than monitoring use of the Trademarks, the Court will afford RCR the opportunity to seek redress to address that concern;

3. As a means of affording Chelda, Inc. the ability to monitor compliance of RCR's escrow payments, Defendant RCR Marketing, LLC shall hereby provide Plaintiff Chelda, Inc. with timely records of the payments made into the escrow account of Forman Rossabi Black of four percent (4%) of its gross sales generated from operation of the Ham's restaurants while using the Trademarks as described herein. Should RCR fail within a reasonable time to produce such records to Chelda, the Court will afford Plaintiffs the opportunity to seek redress to address that concern. Nothing in this Order gives any party a present right or interest in the money deposited in the previously designated escrow account as described herein;

4. Defendant RCR Marketing, LLC is hereby enjoined from removing equipment,

furniture, or fixtures enumerated in the list of assets filed with the Ham's Inc. Bankruptcy Petition which is listed as purchased on or before January 1, 2005 which might be located at the individual Ham's restaurants as follows: 310 W. Franklin Street, Chapel Hill, NC 27514; 2373 Riverside Drive, Danville, VA 24540; 3709-J Battleground Avenue, Greensboro, NC 27408; 3017 High Point Rd, Greensboro, NC 27403; 701 Evans Street, Greenville, NC 27834; 221 University Blvd, Harrisonburg, VA 22801; 204 Hwy 321 NW, Hickory, NC 28601; 5840 Samet Drive, High Point, NC 27265; 2001 N. Main Street, High Point, NC 27262; 550 Pineview Drive, Kernersville, NC 27284; 5704 Seminole Ave, Lynchburg, VA 24502; 1707 South Horner Blvd., Sanford, North Carolina 27330; and 1910 E. Dixon Blvd., Shelby, NC 28150.  In addition, to the extent that a question exists as to ownership of equipment, furniture, or fixtures purchased on or after January 1, 2005 which is not enumerated on the aforementioned list, RCR is prohibited from removing such property during the pendency of this litigation. With respect to the property listed as purchased prior to January 1, 2005, RCR is hereby permitted to remove and/or sell property enumerated in the list of assets filed with the Ham's Inc. Bankruptcy Petition which is listed as purchased on or before December 31, 2004

This the 3rd day of December, 2010

_____
United States District Judge